AO 106 (Rev. 01/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of California

FILED
NOV 16 2015
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY DEPUTY

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
Microsoft Hotmail Accounts - a) amylinyhu@hotmail.com and b) amy_linyhu@hotmail.com

Case No. '15MJ3400

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the Western District of Washington *(identify the person or describe property to be searched and give its location)*: See Attachment A

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*: See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of 21 U.S.C. § 952, 960, 963, and the application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of ___ days (give exact ending date if more than 30 days: ____________ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

[signature]
*Applicant's signature*

Wade Lair, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11/13/15

[signature]
*Judge's signature*

City and state: San Diego, California

Honorable Jan M. Adler, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Wade Lair, Special Agent with the United States Immigration and Customs Enforcement, Homeland Security Investigations, having been duly sworn, depose and state:

## INTRODUCTION

1. This affidavit is offered in support of an application by the United States of America for a search warrant for Microsoft Online Services. I seek authority to search Microsoft Online Services located as described in Attachment "A", for the following email accounts as described in Attachment "B", paragraph II: "amylinyhu@hotmail.com" and "amy_linyhu@hotmail.com" from May 1, 2015 to June 30, 2015, for items which constitute evidence, fruits, and instrumentalities of violations of federal criminal law, namely, Title 21, United States Code, Sections 952 and 960.

2. This affidavit is based upon information I have gained through training and experience, as well as upon information related to me by other individuals, including law enforcement officers. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of narcotics investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

3. I am a Special Agent with Homeland Security Investigations ("HSI"), and have been employed by HSI since January 2003. I am currently assigned to the Special Agent in Charge, San Diego Field Office, Asset Identification and

Removal Group, and my duties include supporting HSI investigations with the identification and seizure of assets and the initiation of civil/criminal forfeiture action against assets derived from criminal activities. I have also investigated illicit controlled substance trafficking, including the importation and distribution of illegal substances. I have had approximately twenty (20) weeks of intensive training at the Federal Law Enforcement Training Center at Glynco, Georgia. These twenty (20) weeks comprised of approximately twelve (12) weeks of the basic Criminal Investigator Training Program, and approximately eight (8) weeks of HSI Special Agent Training. Prior to working for HSI, I was employed as a Special Agent with the Internal Revenue Service – Criminal Investigation (IRS-CI) division for seven years. Prior to my employment with IRS-CI, I was employed as a compliance and regulatory auditor for the State of Nevada Gaming Control Board for approximately three years.

4. In the course of my duties, I worked as the case agent, directed specific drug-related investigations and I interviewed defendants and witnesses relative to the illegal trafficking of controlled substances. Through my observations and the interviews, I gained knowledge and insight into the normal operational habits of narcotics smugglers, with particular emphasis on those who attempt to import narcotics into the United States from Mexico through the Southern California ports of entry.

5. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that cell phones, computers and other electronic media are permanently possessed by individuals involved in smuggling illegal narcotics much in the same way a legitimate business will

maintain records and tools of its trade. These items are kept by individuals involved in smuggling illegal narcotics whether or not they are involved in or arranging for a criminal act at any given moment.

6. Based upon the following information, I believe there is probable cause to believe that currently located within the location listed in Attachment "A," there is evidence, fruits and instrumentalities of narcotics trafficking, in violation of Title 21, United States Code Sections 952 and 960.

## STATEMENT OF PROBABLE CAUSE

7. On May 20, 2015, at approximately 1630 hours, Leticia Linyhu ESTEVEZ-Palmer attempted to enter the U.S. from Mexico at the San Ysidro Port of Entry (POE), San Diego, California as the driver of a black 2003 Ford Focus bearing Baja Mexico license N12NRC8. ESTEVEZ was the driver of the vehicle, with her minor daughter as the only other passenger.

8. At pre-primary inspection, ESTEVEZ provided two negative customs declarations to the Customs and Border Protection ("CBP") officer. The CBP officer noted that the older model vehicle appeared unusually clean and had a newly issued Baja Mexico license. The CBP officer then inspected the inside of the trunk and noticed the spare tire had finger marks on the rim. After picking up the tire and feeling it was abnormally heavy, the CBP officer bounced the tire on the ground and noticed what seemed like packages moving inside the tire. The CBP officer placed the tire back in the trunk and escorted the vehicle to the secondary inspection area.

9. At secondary inspection, a Narcotic/Human Detector K-9 alerted to the spare tire in the trunk. A CBP officer assigned to secondary inspection removed the tire and cut into the sidewall, discovering packages in plastic containers wrapped in clear plastic. Further inspection of the tire revealed seven (7) packages weighing approximately 3.96 kilograms and field-testing positive for methamphetamine; and two (2) packages weighing approximately 2.32 kilograms and field-testing positive for cocaine.

10. Thereafter, HSI special agents responded to the Port of Entry to conduct an investigation. The HSI special agents contacted ESTEVEZ and advised ESTEVEZ of her Miranda rights. ESTEVEZ stated that she understood those rights and invoked her right to counsel, at which time the contact was ended. ESTEVEZ was arrested for importation of a controlled substance, in violation of Title 21, United States Code, Sections 952 and 960.

11. During the course of my investigation, HSI Special Agent David Vazquez reviewed recorded telephonic conversations that occurred on or about June 14-15, 2015, between ESTEVEZ and a female believed to be ESTEVEZ's sister. During the conversations, ESTEVEZ mentioned that her phone calls were being recorded and asked the female to cancel her (ESTEVEZ's) Facebook account that was associated with her email address. ESTEVEZ also provided the female with multiple email accounts and associated passwords used by ESTEVEZ. Two of the email accounts mentioned by ESTEVEZ included: "amylinyhu@hotmail.com" and "amy_linyhu@hotmail.com" ESTEVEZ asked the female to access the email accounts and contact certain individuals on ESTEVEZ's

behalf. Further investigation of ESTEVEZ's Facebook account confirmed that conversations, including some that occurred around the approximate time of her smuggling event, were deleted, though agents were unable to determine when the deletions specifically occurred.

12. Based on my training and experience, I know that drug traffickers increasingly use electronic communications as a means of furthering their drug trafficking activities. Whether it is to recruit and track couriers, coordinate narcotic deliveries, share information regarding seizures of narcotics, or simply as a means of written communication, electronic communication can make up a significant portion of drug traffickers' communication with each other. I believe that the above facts demonstrate that the user(s) of the subject accounts have used/are using the subject accounts to further their drug trafficking activities, specifically the importation of narcotics.

13. In my experience, drug traffickers will generally use the same methods of communication to conduct their business. It is likely that the subject accounts have been used to communicate with more than one individual as a method of coordinating the narcotic trafficking business. Based on my experience and the results of prior electronic search warrants I have executed, by executing this warrant, I expect to learn the more about the smuggling activity involving ESTEVES on May 20, 2015, and the names of other individuals with whom she may have communicated and/or coordinated with.

## PRIOR ATTEMPTS TO OBTAIN DATA

14. The United States has not attempted to obtain this data by other means.

## GENUINE RISKS OF DESTRUCTION

15. Based upon my experience and training, and the experience and training of other agents with whom I have communicated, electronically stored data can be permanently deleted or modified by users possessing basic computer skills. In this case, only if the subject receives advance warning of the execution of this warrant, will there be a genuine risk of destruction of evidence.

## INTERNET SERVICE PROVIDER (ISP)

16. Microsoft Corporation is a technology company, which, among other things, provides electronic communication services to its subscribers as "Microsoft Online Services." Microsoft Online Services' electronic mail service includes the email service branded "Hotmail" and allows Microsoft Online Services subscribers to communicate with other electronic mail subscribers through the Internet. ISP subscribers access Microsoft Online Services through the Internet.

17. Subscribers to Microsoft Online Services use screen names during communications with others. The screen names may or may not identify the real name of the person using a particular screen name. Although Microsoft Online Services requires users to subscribe for a free Microsoft Online Services account, Microsoft Online Services does not verify the information provided by the

subscriber for its free services.

18. At the creation of a Microsoft Online Services account and for each subsequent access to the account, Microsoft Online Services logs the Internet Protocol ("IP") address of the computer accessing the account. An IP address is a unique address through which a computer connects to the Internet. IP addresses are leased to businesses and individuals by Internet Service Providers. Obtaining the IP addresses that have accessed a particular Microsoft Online Services account often identifies the Internet Service Provider that owns and has leased that address to its customer. Subscriber information for that customer then can be obtained using appropriate legal process.

## PROCEDURES FOR ELECTRONICALLY STORED INFORMATION

19. Federal agents and investigative support personnel are trained and experienced in identifying communications relevant to the crimes under investigation. The personnel of Microsoft Online Services are not. It would be inappropriate and impractical for federal agents to search the vast computer network of Microsoft Online Services for the relevant accounts and then to analyze the contents of those accounts on the premises of Microsoft Online Services. The impact on Microsoft Online Services' business would be severe.

20. Therefore, I request authority to seize all content, including electronic mail and attachments, stored instant messages, stored voice messages, photographs and any other content from the Microsoft Online Services account, as described in Attachment B. In order to accomplish the objective of the search

warrant with a minimum of interference with the business activities of Microsoft Online Services, to protect the rights of the subject of the investigation and to effectively pursue this investigation, authority is sought to allow Microsoft Online Services to make a digital copy of the entire contents of the account subject to seizure. That copy will be provided to me or to any authorized federal agent. The copy will be forensically imaged and the image will then be analyzed to identify communications and other data subject to seizure pursuant to Attachment B. Relevant data will be copied to separate media. The original media will be sealed and maintained to establish authenticity, if necessary.

21. Analyzing the data to be provided by Microsoft Online Services may require special technical skills, equipment and software. It also can be very time-consuming. Searching by keywords, for example, often yields many thousands of "hits," each of which must be reviewed in its context by the examiner to determine whether the data is within the scope of the warrant. Merely finding a relevant "hit" does not end the review process. Certain file formats do not lend themselves to keyword searches. Keywords search text. Many common electronic mail, database and spreadsheet applications, which files may have been attached to electronic mail, do not store data as searchable text. The data is saved in a proprietary non-text format. And, as the volume of storage allotted by service providers increases, the time it takes to properly analyze recovered data increases dramatically.

22. Based on the foregoing, searching the recovered data for the information subject to seizure pursuant to this warrant may require a range of data analysis techniques and may take weeks or even months. Keywords need to be

modified continuously based upon the results obtained. The personnel conducting the examination will complete the analysis within ninety (90) days of receipt of the data from the service provider, absent further application to this court.

23. Based upon my experience and training, and the experience and training of other agents with whom I have communicated, it is necessary to review and seize all electronic mails that identify any users of the subject account(s) and any electronic mails sent or received in temporal proximity to incriminating electronic mails that provide context to the incriminating mails.

24. All forensic analysis of the imaged data will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

**CONCLUSION**

25. Based on the foregoing, there is probable cause to believe that the items identified in Attachment B have been used in the commission of a crime and constitute evidence, fruits, and instrumentalities of violations of Title 21, United States Code, §§ 952 and 960 and will be found at the premises to be searched as provided in Attachment A.

Wade Lair
Special Agent
Homeland Security Investigations

SUBSCRIBED TO AND SWORN TO
before me this 13th day of November, 2015.

The Honorable Jan M. Adler
United States Magistrate Judge

# ATTACHMENT A

Microsoft Online Services is an Internet service provider with its primary computer information systems and other electronic communications and storage systems, records, and data located at Microsoft Online Services, One Microsoft Way, Redmond, WA 98052-6399.

# ATTACHMENT B

## I. Service of Warrant

The officer executing the warrant shall permit Microsoft Online Services, as custodian of the computer files described in Section II below, to locate the files and copy them onto removable electronic storage media and deliver the same to the officer.

## II. Items subject to seizure

All subscriber and/or user information, all electronic mail, images, text messages, histories, buddy lists, profiles, method of payment, detailed billing records, access logs, transactional data and any other files associated with the following accounts and screen names from May 1, 2015 to June 30, 2015:

**amylinyhu@hotmail.com**
**amy_linyhu@hotmail.com**

The search of the data supplied by Microsoft Online Services pursuant to this warrant will be conducted as provided in the "Procedures For Electronically Stored Information" of the incorporated affidavit submitted as an attachment to the affidavit submitted in support of this search warrant and will be limited to seizing electronic mail and attachments that are evidence of 21 U.S.C. §§ 952 and 960:

a. Electronic communications and attachments advertising, offering, and/or soliciting to engage in smuggling or trafficking of illegal narcotics;

b. Electronic communications and attachments which reference smuggling or trafficking of illegal narcotics;

c. Electronic mail, blog communications and attachments related to the identities of any co-conspirators;

d. Electronic mail, blog communications and attachments that provide context to any electronic mail reflecting the criminal activity described in this warrant including any electronic mail sent or received in temporal proximity to any relevant electronic mail and any electronic mail that identifies any users of the subject account.